USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12-4-09

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------x
JOSE O. DAVILA,
                                              08 Civ. 3227 (DAB) (DFE)
                        Petitioner,
                                              REPORT AND RECOMMENDATION
        -against-                             TO JUDGE BATTS

MARK BRADT, Acting Superintendent,
Elmira Correctional Facility,

                        Respondent.
---------------------------------------x
```

DOUGLAS F. EATON, United States Magistrate Judge.

    Jose O. Davila brings this *pro se* habeas corpus petition to challenge his robbery conviction after a 2004 suppression hearing before Justice Harold Silverman and a 2005 jury trial before Justice Martin Marcus.

    Mark Brenner, Esq. represented Davila throughout the proceedings in Supreme Court, Bronx County. On direct appeal, Davila was represented by the Office of the Appellate Defender (primarily Rosemary Herbert and Emily Huters).

    During the suppression hearing, Mr. Brenner argued that the victim's identification of Davila was the result of an unlawful detention followed by an unnecessary and suggestive showup. Justice Silverman ruled that (a) the officers had reasonable suspicion to detain Davila for a short period of time, and (b) the showup procedure was prompt and proper and the jury would be permitted to hear the testimony concerning the victim's identification.

    At trial, after the close of the People's case, Mr. Brenner contended the evidence was insufficient to show that a dangerous instrument was used during the course of the robbery. Justice Marcus denied Mr. Brenner's dismissal motion; of course, he permitted Mr. Brenner to make the same contentions to the jury.

    The judge presented only two counts to the jury: Robbery in the First Degree (robbery with a dangerous instrument) and, in the alternative, Robbery in the Third Degree (forcefully stealing property from its owner). The jury found Davila guilty of Robbery in the First Degree. Because Davila had two prior convictions for robbery, New York Penal Law §70.04 required the

-1-

judge to sentence Davila to prison for at least 10 years and no more than 25 years. Justice Marcus imposed a prison term of 14 years, to be followed by 5 years of supervised release.

Davila's appellate attorneys presented four grounds to the Appellate Division:

> (1) The trial evidence was legally insufficient to establish the existence of a dangerous instrument. Alternatively, the conviction was against the weight of the evidence.
>
> (2) The prosecution failed to establish that there was probable cause to detain Davila.
>
> (3) The complainant's in-court identification of Davila should have been suppressed because it was based on an unduly suggestive showup.
>
> (4) Davila's sentence was excessive and should be reduced from 14 years to the 10-year minimum.

The Appellate Division affirmed the conviction and sentence. *People v. Davila*, 37 A.D.3d 305, 830 N.Y.S.2d 117 (1st Dept. 2007), *leave denied*, 9 N.Y.3d 842, 840 N.Y.S.2d 768 (2007).

Davila turned to our Court and filed a timely pro se habeas petition on February 20, 2008.

On June 10, 2008, Assistant District Attorney ("A.D.A.") Lawrence Cunningham filed an opposing affidavit, which annexed a memorandum of law and Exhibits 1 through 7. (I shall refer to certain of those exhibits as "Exh. ___.") His affidavit noted that he had not yet received the transcripts from the archives.

On September 4, 2008, Davila served a 2-page traverse and a 33-page memorandum of law. His memorandum drops the argument about the weight of the evidence and the argument for a lesser sentence. It appears that Davila wisely realizes that those two arguments raise no claim under the U.S. Constitution. His *pro se* memorandum closely tracks his appellate attorneys' briefs, and adds some citations of federal caselaw.

The District Attorney's Office filed the trial transcript on June 18, 2009. In a cover letter to me dated July 23, 2009, A.D.A. Nancy Killian said she was enclosing "a copy of the state court suppression hearing." I may have misplaced the hearing

transcript. She sent me another copy on December 1, 2009, and I will submit it for docketing.

For the reasons set forth below, I recommend that Judge Batts deny Davila's habeas petition.

### **The challenge to the ruling that the police had reasonable suspicion of criminality, warranting their forcible detention of Davila**

A federal habeas court will not entertain argument about whether a state court's ruling on Fourth Amendment claims was correct or incorrect "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim." *Stone v. Powell*, 428 U.S. 465, 481-82, 96 S.Ct. 3037, 3046 (1976). In the case at bar, Justice Silverman held a suppression hearing. He heard testimony from the robbery victim Syreeta Johnson (H.Tr. 10-46) and from Police Officer Peter Duke (H.Tr. 47-60). Defense counsel cross-examined them and then presented oral argument. In an oral decision (H.Tr. 76-87), Justice Silverman said he found both witnesses credible, cited *Terry v. Ohio*, 392 U.S. 1 (1968), and discussed the facts that provided reasonable suspicion warranting the officers to stop and detain Davila while they conducted a brief investigation. On Davila's appeal, the Appellate Division wrote:

> "The court properly denied defendant's suppression motion. The police did not stop defendant solely on the basis of an unspecified description. After receiving a report of a violent crime that had just been committed in a park, the police saw defendant, who fit an unspecified description of the perpetrator, near the park. Defendant was being pursued by two people, who called the officer's attention to defendant by frantically pointing at him, and defendant walked quickly away when an officer asked him to stop. The inference to be drawn from the fact that the pursuers were seeking to attract police attention while the pursued was seeking to *avoid* it was obvious. These facts provided reasonable suspicion of criminality (*see e.g. People v Brown*, 266 AD2d 77 [1999], *lv denied* 95 NY2d 378 [2000]), warranting a forcible detention for the purpose of identification by the victim (*see People v Allen*, 73 NY2d 378 [1989])."

(Exh. 4.) In short, Davila received full and fair litigation of his Fourth Amendment claim. Because of *Stone v. Powell*, he is barred from asking a federal habeas court to decide whether the

state court ruling on that Fourth Amendment claim was correct or incorrect.

### The challenge to the refusal to suppress the showup identification made by the victim minutes after the robbery

At H.Tr. 86-87, Justice Silverman said:

".... The showup was a probable [proper] one. It occurred promptly after the crime within fifteen minutes. It was within the geographical area[,] anywhere from ten to twelve blocks from where the crime had occurred.

".... [I]f the witness does not identify the suspect, that person can be released immediately and the police investigation may continue.

"Circumstances in this case, both geographic and temporal, being close to the time of the commission of the crime, under People against Duu[v]on ..., 77 New York 2d 541, that is a proper showup ...."

In *People v. Duuvon*, 77 N.Y.2d 541, 544, 569 N.Y.S.2d 346, 348 (1991), the New York Court of Appeals upheld a showup identification of Duuvon in handcuffs, and noted it had upheld a showup in an earlier decision in which one Brjnja "was apprehended less than a mile from the robbery scene and was transported in a police vehicle to the robbery scene, where he was identified by the victim 15 minutes after the crime was committed." In *Duuvon*, the only reason there was a debate was that Duuvon had already been identified by a witness who was present during the entire crime, and yet the police conducted an arguably unnecessary showup with a second witness.

Now that Davila is seeking federal habeas, he must show that the state court's refusal to suppress the identification involved an unreasonable application of a holding of the U.S. Supreme Court. He cites *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967 (1967). But the holding of *Stovall* was to affirm the denial of habeas; the Supreme Court wrote that the showup of Stovall was "imperative" because there was no time for a lineup and the showup "could have resulted in freedom for Stovall" if the witness had said he was not the perpetrator. 388 U.S. at 302.

Davila also cites a circuit court opinion, *Raheem v. Kelly*, 257 F.3d 122 (2d Cir. 2001). But *Raheem* involved a lineup, a

-4-

procedure that is conducted when there is enough time (a) to find several persons to act as "fillers" who have physical appearances roughly similar to the arrestee's, and (b) to minimize the impact of distinctive items of clothing.  In *Raheem*, the central problem was the perpetrator's distinctive expensive black leather coat; in the lineup, Raheem was the only person wearing a black leather coat.  257 F.3d at 136.

Davila's reply memorandum makes no response to the citation of *United States v. Bautista*, 23 F.3d 726, 730 (2d Cir. 1994), in Respondent's 6/11/08 memorandum at page 13.  In *Bautista*, Judge Oakes wrote (with my emphasis added):

> "We find that the presentation of the suspects to the CI immediately following the raid was not **unnecessarily** suggestive.  ....  Indeed, this court has instructed law enforcement officials that where an officer has 'or should have doubts whether a detained suspect is in fact the person sought, the officer **must** make immediate reasonable efforts to confirm the suspect's identity.'"

Moreover, *Bautista* was a direct appeal from a federal conviction.  It is even more difficult to challenge a showup when the challenger is seeking federal habeas after a state conviction.  In *Brisco v. Ercole*, 565 F.3d 80 (2d Cir. 2009), *cert. denied*, ___ S.Ct. ___, 2009 WL 2336997 (Nov. 30, 2009), the Second Circuit denied habeas even though the officers told Brisco to display, at his showup, the maroon shorts that he had discarded, where the witness had specifically told them that the burglar had been wearing maroon shorts.  The Second Circuit wrote:

> "Our determination of whether a court has unreasonably applied a legal standard depends in large measure on the specificity of the standard in question.  ....
>
> "The determination of whether an identification procedure violates due process is governed by an extraordinarily general standard ....  A court applying this standard to the facts of a specific case is therefore entitled to significant 'leeway' when we review its decision for reasonableness.
>
> \*    \*    \*
>
> "Like *Bautista*, the showup here [in *Brisco*] was of course suggestive, but it was not unreasonable

for the state courts to have concluded that it was not *unnecessarily* suggestive."

*Brisco*, 565 F.3d at 89-91 (emphasis in the original).

In the case at bar, the Appellate Division was reasonable when it wrote:

> ".... The fact that defendant [Davila] was in handcuffs and in the presence of police officers did not render the victim's showup identification, made in close temporal and spatial proximity to the crime, unduly suggestive (*see e.g. People v Kirk*, 27 AD3d 383 [2006], *lv denied* 6 NY3d 895 [2006])."

(Exh. 4.) The *Kirk* case is directly on point; more recently, Kirk's petition for federal habeas was denied in *Kirk v. Burge*, 646 F.Supp.2d 534, 2009 WL 438054 (Aug. 6, 2009); Judge Swain adopted Magistrate Judge Gorenstein's report, which said (near the end of Section III-C):

> "Finally, the absence of a description of the perpetrator by the witness before the [showup] identification would be relevant only to the reliability of the identification, rather than the situation's suggestiveness. *See [Neil v.] Biggers*, 409 U.S. at 199-200, 93 S.Ct. 375 (listing the witness's prior description of perpetrator as a reliability factor). Because the showup identification procedure used here was not unnecessarily suggestive, we need not reach the issue of whether the identification was reliable. *See Bautista*, 23 F.3d at 729 (both [unnecessary] suggestiveness and lack of reliability are needed for constitutional violation to exist)."

I am enclosing a copy of *Kirk*, 2009 WL 438054, for Davila.

In sum, the rulings by Justice Silverman and the Appellate Division were entirely reasonable in light of the hearing evidence. At trial, evidence was elicited in more detail; the net effect was strong confirmation that the showup procedure was not unnecessary. This is sufficient to deny suppression without even reaching the *Biggers* reliability factors; it is merely an extra bonus that the evidence also showed that the victim had ample opportunity to view the robber, and that little time elapsed between the crime and her confrontation with Davila. See below for the summary of the trial evidence.

Next, however, I proceed to Davila's remaining claim:

### The claim that the trial evidence was insufficient to establish the existence of a "dangerous instrument"

At Tr. 697, Mr. Brenner argued that "[t]he evidence was legally insufficient to establish that the robbery was accomplished by the use of or the threatened use of or the immediate use of a dangerous instrument." At Tr. 701-02, Justice Marcus replied (with my emphasis added):

> ".... I did review my notes of her testimony, and her testimony was that the defendant placed a hard object against her neck and asked her to take off the things, meaning jewelry, or he would kill her. He put the object to her neck. She said she didn't see it, but that **it was a sharp object**. And on cross she indicated also that she didn't know what happened to the object afterwards, but she knew **it was shiny**.
>
> "So what we have here is testimony about a hard, sharp, shiny object being used in the course of a robbery and it is coupled with the threat that if the complainant didn't deliver up her things, her jewelry, he would kill her. And that **description of the object** coupled by the threat, is legally sufficient.
>
> "I would cite People against Moore, 185 AD2d 825, [586 N.Y.S.2d 647 (2d Dept. 1992)]; People against Anderson, 204 AD2d 191, [612 N.Y.S.2d 25 (1st Dept. 1994)]; .... And I think the facts in this case are distinguished from the facts in People against Pera[l]ta, ... 3 AD3d 353, [770 N.Y.S.2d 339 (1st Dept. 2004)]."

*Peralta* is indeed readily distinguishable. Peralta "was immediately apprehended at the crime scene, [yet] no dangerous instrument was ever recovered either from defendant or from the premises." 770 N.Y.S.2d at 341. By contrast, Davila had ample opportunity to discard the sharp, shiny object (and the victim's property); before he was apprehended, he fled from the crime scene, ran for several blocks, and walked in and out of a park. The *Peralta* decision said at 341: "A defendant's statement that he has a weapon or a threat that he will kill or harm his alleged victim is insufficient, without more, to sustain a conviction for an offense requiring proof that the defendant used or threatened

to use a dangerous instrument (*see e.g. People v. Moore*, 185 A.D.2d 825, 586 N.Y.S.2d 647)." In *Moore*, the defendant said he would stab the complainant, but "[t]he complainant did not see a knife, or feel anything pressed against him." 586 N.Y.S.2d at 648. The *Peralta* decision also said at 341: "Neither Lopez nor anyone else who appeared at the crime scene saw [Peralta] in possession of any object or substance fitting the definition of a dangerous instrument (*cf. People v. Anderson* ...)."

   *Anderson* is directly on point in the case at bar. Anderson was "apprehended moments after and in close proximity to the scene of a nighttime street robbery." 612 N.Y.S.2d at 25. No dangerous instrument was recovered, but there was sufficient evidence that Anderson had possessed one: "At trial, the victim positively identified [Anderson] as the perpetrator who had placed a knife or sharp object to his throat as he demanded the jacket." *Ibid*. *Anderson* was cited in the case at bar by Justice Marcus, and also by the Appellate Division, which wrote:

> ".... Credible evidence that defendant [Davila] held a sharp, shiny object to the victim's neck and threatened to kill her if she did not give up her property established the element of use or threatened use of a dangerous instrument (*see e.g. People v. Anderson*, ...)."

(Exh. 4.) This ruling was entirely reasonable. See below for the summary of the trial evidence.

### **THE TRIAL EVIDENCE**

   The jury heard testimony from Police Officer Peter Duke (Tr. 375-492), Mario Garay (Tr. 493-563), Jose Alexandrino (Tr. 564-78), and the robbery victim Syreeta Johnson (Tr. 584-665). Garay, who had been the unstinting pursuer, testified through a Spanish interpreter. The three witnesses who had interacted with him (the victim, the passerby Alexandrino, and the officer) were all college graduates. The prosecutor also called fingerprint examiners (Tr. 674-88, 688-94) who acknowledged (and put in perspective) the absence of Davila's fingerprints on a file folder that the robber apparently left at the crime scene. The defense called no witnesses.

   At approximately 6:00 p.m. on February 3, 2004, Johnson was doing her laundry in the basement of her building in the Bronx. A man entered the laundry room and asked her where he could find the building's superintendent. She told the man how to contact the superintendent. The man left the laundry room, but soon

returned and said he would wait inside because it was cold outside. The laundry room was lighted, and the man was about 8 feet away from her. As she walked back to her laundry machine, the man approached her from behind. He "put an object in my back and let me know he wanted me to take off all my stuff and to give him everything or he would kill me." She asked the man if he was serious. (She was 5'9" tall, and he was relatively short.) She stared at the man's face and noticed that he had a big nose and a Spanish accent. (Tr. 586-90.)

    The man now moved the object to the left side of her neck. The object was "sharp." The man snatched her watch from her wrist and removed a ring from her thumb. He told her to remove her necklace; she initially refused and told him that it had sentimental value to her. The man said he was getting upset. He made a lunging gesture; it made her afraid that he was going to stab her. She was able to notice that he was holding an object that was "shiny." She removed the necklace and gave it to him. He demanded her earrings, and she gave them to him. She also gave him $18 from her pocket. She did not see where he put any of the stolen items; she continued to stare at his face. (Tr. 591-96, 612.)

    The man told her to stand in a corner; he pushed her on the right shoulder, and she pushed him back. He slipped on the wet floor, she screamed, and he ran out of the basement laundry room. (Tr. 597.)

    At that moment, Mario Garay was standing across the street from the laundry room, looking through a glass door. He saw a man running out of the laundry room followed by Johnson, who was screaming and pointing at the man. (Tr. 495-500.) Johnson saw that Garay had joined her in chasing the man. (Tr. 597-98.)

    Johnson and Garay did not lose sight of the man as he ran along Bedford Park Boulevard toward the Grand Concourse. (Tr. 498-99, 598.) When they reached the Grand Concourse, Johnson attempted to board a bus, but the bus driver prevented her from doing so because she did not have a Metrocard. She saw the man and Garay make a right turn and run along the Grand Concourse in the direction of "downtown" (south). At this point, Johnson walked back toward her building and called 911 from a store near her building. (Tr. 598-600.)

    Garay pursued the man down the Grand Concourse. At 199th Street, the man got into a parked taxi, but Garay prevented an escape by shouting at the taxi driver: "[D]on't take him[,] because he did something wrong [back] there at the laundry room

-9-

in [on] Bedford Park. If you take him - - if you take him, I'll take down your license plate and report it to the police and you'll have a problem." In response, the taxi driver remained parked. As a result, the man got out of the taxi and resumed running down the Grand Concourse. (Tr. 503-05.)

Garay resumed his pursuit, now maintaining a distance of about half a block behind the man. The man looked back at Garay several times during the chase. It was raining and snowing that evening. There were not many people on the Grand Concourse, and the only persons who were running were the man and Garay. (Tr. 506-07.)

When the man reached 198th Street, he made a right turn. Then he made a left turn onto Creston Avenue and ran into St. James Park. Garay could still see the man inside the park near the fence. (Tr. 507-508.)

On the sidewalk just outside the park, Garay saw a passerby with a cellphone (Alexandrino). Garay asked him to call 911. Alexandrino did so, and reported what he understood from Garay, namely, that a man was in St. James Park who had committed a crime against a woman. (Tr. 506-08, 511-14, 567-69.) (Garay thought it had been a rape, Tr. 500.)

At bit earlier, at 6:07 p.m., Officer Duke had responded to the earlier 911 call, the one from Johnson. The 911 report said that Johnson had been robbed by a male Hispanic wearing a black leather jacket, a blue hoodie, and black pants, who had run to the Grand Concourse. (Tr. 481-85.) He interviewed her at Bedford Park Boulevard very briefly. Officers Oquendo and Murray drove up and took Johnson in their car to tour the neighborhood. (Tr. 379-82.)

Officer Duke got in his car, drove to the Grand Concourse, and then headed southbound. Around 6:17 p.m. (Tr. 482) he received a radio call relaying the second 911 call, the one from Alexandrino about a male Hispanic wearing a black jacket and black pants in St. James Park. Duke spotted a man who matched that description and who was briskly walking out of St. James Park. He testified that Davila was that man. (Tr. 383-86.)

In his patrol car, Duke followed Davila down 192nd Street. He asked Davila to have a word with him. Davila did not respond and began walking more briskly. Duke and his partner chased Davila and stopped him, and at that time two men (soon identified as Garay and Alexandrino) stopped the officers and were pointing at Davila. (Tr. 387-89.)

Duke handcuffed Davila, frisked him, and found no weapon. (Tr. 389-90.)  Duke placed Davila in the back of his patrol car. He met with Garay and Alexandrino.  (At Tr. 512-15, Garay testified that Davila was the man who had run out of the laundry room pursued by Johnson.)  Duke made a radio request for Officers Oquendo and Murray to bring Johnson to 192nd Street.  She arrived 15 or 20 minutes after Duke's first response, hence approximately between 6:22 and 6:27 p.m.  Duke removed Davila from the car and placed him under a street light.  (Tr. 390-94.)  Johnson observed Davila from a distance of about 10 feet, and she positively identified Davila as the man who had robbed her.  (Tr. 604-06.) Duke then arrested Davila for robbery.  A search of his person recovered no weapon and none of the victim's property.  (Tr. 397-98.)  As noted at page 7 of today's Report, Davila had ample opportunity to discard those items while running for blocks and while walking in St. James Park.

## CONCLUSION AND RECOMMENDATION

For the reasons set forth above, I recommend that Judge Batts deny Davila's habeas petition.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, any party may object to this recommendation within 14 calendar days after being served with a copy (*i.e.*, **no later than December 23, 2009**), by mailing written objections to the Clerk of the U.S. District Court and mailing copies (a) to the opposing party, (b) to the Honorable Deborah A. Batts, U.S.D.J., at Room 2510, 500 Pearl Street, New York, NY 10007 and (c) to me at Room 1360, 500 Pearl Street, New York, NY 10007.  Failure to file objections within 14 calendar days will preclude appellate review.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), and 6(d).  **Any request for an extension of time must be addressed to Judge Batts.**

*/s/ Douglas F. Eaton*
DOUGLAS F. EATON
United States Magistrate Judge
U.S. Courthouse
500 Pearl Street, Room 1360
New York, NY 10007

Dated:    New York, New York
          December 4, 2009

Copies of this Report and Recommendation are being mailed to:

Jose Davila
DIN # 05A1194
Elmira Correctional Facility
P.O. Box 500
Elmira, New York 14902
    (enclosing also a copy of *Kirk v. Burge*, 2009 WL 438054)

Lawrence Cunningham, Esq.
Assistant District Attorney
Bronx County
198 East 161st Street
Bronx, New York 10451

Hon. Deborah A. Batts